■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY WARREN, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (O'Dwyer, J.), rendered February 18, 1982, convicting him of criminal possession of a controlled substance in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress certain evidence. Judgment affirmed and case remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (subd 5). Upon analysis it will be seen that defendant was subjected to four customs inspections or examinations. The first (by Inspector Steinkamp) was an admittedly permissible routine customs border inspection (see US Code, tit 19, § 1582; *United States v Ramsey,* 431 US 606). The record establishes that at about 3:30 P.M. on September 19, 1980, defendant arrived in New York on a flight from India, a "source country" for narcotics. Defendant approached the customs station by himself. He had only one piece of luggage, a hand piece. He informed Inspector Steinkamp that his trip had been for 10 days and that he had made no purchases in India. All of these facts tended to fit the profile (developed by customs intelligence) of a narcotics smuggler. A search of defendant's luggage, however, was negative and he was granted permission to go through customs. After being cleared by Inspector Steinkamp, defendant did not leave the customs area but, instead, went to the station at which one Marc Banner was being examined by Inspector Calderoli. Calderoli had just ascertained that Banner had a prior record of narcotics arrests; had come from India; had been there a short time; allegedly was traveling alone; had only one piece of luggage; and was unemployed. On observing that defendant was waiting for and talking to Banner, Calderoli asked whether they knew each other and had been traveling together. They responded in the affirmative. Thus, Banner was revealed to have lied when he initially stated that he had been traveling alone. Further, although the men had traveled together and were among the first to arrive at the customs area because of their paucity of luggage, they went to different customs stations. Based upon all of these facts, Inspectors Steinkamp asked defendant to return to the inspection station for a second examination. Steinkamp then ran a computer check which revealed that defendant (like Banner) had a prior record of narcotics arrests. Another search of defendant's luggage proved negative, and he was again permitted to leave. Before defendant left the customs area, however, Inspector Calderoli found in Banner's

luggage a box marked five condoms but containing only three; a jar of vasoline; dental floss; and a poison safety kit. The latter contains a syrup which, when swallowed, "make[s] you throw up right away, in the event you drink a toxic chemical of any kind." These items found in Banner's luggage clearly fit the profile of a smuggler. Calderoli advised Inspector Steinkamp that he had found these items and Steinkamp summoned defendant — who had not yet left the customs area — to return for a further examination (the third). This examination consisted of a pat-down and a strip search. The strip search of defendant revealed a white object protruding from his anus. It was manifest that this white object might be a condom and that this was an unusual place for such object to be located. The customs authorities accordingly requested defendant to submit to a body cavity search. Defendant, of course, was necessarily aware of what was in his body. Facing detention until a court order could be obtained, and possible illness or death from the heroin-containing condoms which were ultimately removed from his body, defendant, at 6:50 P.M. purportedly "consented" to the body cavity search by a doctor — the fourth customs inspection. That search started between 7:00 P.M. and 8:00 P.M. and produced nine condoms, tied with dental floss and containing heroin. It is clear that the first inspection was permissible (see US Code, tit 19, § 1582; *United States v Ramsey,* 431 US 606, *supra*), and defendant concedes that fact. We find that the second, third and fourth examinations were lawful, logical, direct and reasonable and necessary extensions of the permissible first inspection because they were all based on the unearthing of significant new facts which, when combined with the prior information, provided grounds necessary for the continuation and escalation of the initial permissible routine customs border inspection. Accordingly, the motion to suppress the physical evidence was properly denied. Also, we find no basis for disturbing the court's refusal to suppress a statement made by defendant to Special Agent Geier prior to the strip search that defendant and Banner lived in Las Vegas and knew one another. Damiani, J. P., O'Connor, Rubin and Boyer, JJ., concur.